JACOBO SIMONET, Plaintiff and Appellee, *v.* ENRIQUE IGARA-
VÍDEZ and ABELARDO RUIZ SURIA, Defendants and the
latter Appellant.

No. R-62-34.     Decided February 3, 1964.

*Abelardo Ruiz Suria, pro se. Enrique Igaravídez, pro se. Rafael Martínez Álvarez, Jr.,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On May 7, 1958, Enrique Igaravídez leased to Abelardo Ruiz Suria, under a written contract, a parcel of land together with a concrete residence situated in the ward of Hato Nuevo of the Municipality of Guaynabo, for a period of 16 months counted as of May 1, 1958, and for a monthly rental of $145. The said contract would expire on August 31, 1959, and it also contained a first option to purchase in favor of the lessee in the following terms: "In consideration of this lease and of the payment of the sum of One Dollar ($1) by the lessee to the lessor, the latter grants to the lessee the First Option to acquire by purchase the leased real property in the event the lessor—without obligation to do so—decides to sell the same at any time during the term of this lease. To that effect, the lessor shall give written notice to the lessee of his decision to sell the real property specifying the price— which shall not exceed Thirty Thousand Dollars ($30,000)— as well as any other conditions and terms of the transaction which might be reasonable for this type of transaction. The lessee shall have a period of fifteen (15) days counted as of the receipt of such notice to exercise this First Option, and upon failure to do so within such period, the lessor shall be at liberty to sell the real property to any other person. The term of this lease shall not be affected by the fact that the lessor sells the property to another person before the expiration thereof, nor by the fact that the lessee fails to exercise the option within the specified term, both parties being under the obligation to comply at all times with the term of this lease until the expiration thereof."

Although the rights in favor of appellant which may arise from such option do not, to a certain extent, form part of the decision, they explain the issue. Appellant alleged that when the first purchaser appeared, he exercised the option, and the appellee alleged that appellant, after proper notice was given, did not exercise his right to purchase the leased property.

4

The property was sold to the second purchaser, appellee herein, by deed No. 76 of June 5, 1959, executed before Notary Rafael Martínez Álvarez, Jr., in which it was set forth that the purchasers would retain the amount of two thousand dollars from the selling price until the vendors were able to deliver to him the property free from tenants, and deliver the keys and place the purchaser in possession of the property, further setting forth that if the property sold was not delivered to him on or before August 31, 1959, the vendors would be obligated "to pay to the purchaser, as penalty clause, the amount of ten dollars a day as of the thirty-first day of August nineteen hundred and fifty-nine, to be liquidated up to the date the purchaser is placed in possession of the real property sold . . . it being agreed that in order to guarantee the delivery on the aforesaid date or to secure the payment of ten dollars a day by way of indemnity to which reference is made hereinabove, he retains in his possession the said sum of two thousand dollars which is part of the selling price."

The vendor spouses were unable to deliver the land and the residence therein on the date agreed upon with the purchaser because the lessee alleged that the option in his favor had been accepted, and the purchaser resorted to the Superior Court of Puerto Rico, San Juan Part, requesting the eviction of appellant and the payment of the penalty clause of the vendor at the rate of ten dollars a day as of August 31, 1959.

The trial court made the following findings:

"According to the deed executed on June 5, 1959, mutual obligations were established between plaintiff Dr. Jacobo Simonet and defendant Enrique Igaravídez, among them the obligation to deliver the property on August 31, 1959, defendant Enrique Igaravídez having assumed the obligation to make physical delivery of the property on the agreed date. Having failed to comply with the said penalty clause, the latter is bound to pay to plaintiff the sum of $10 a day from September 1, 1959

to the date of the physical delivery of the property to plaintiff. It is well to point out that defendant Abelardo Ruiz Suria has used the property since June 1959, without paying any rent or consideration for the use thereof.

"Since plaintiff Dr. Jacobo Simonet acquired title to the property object of this litigation under the aforementioned deed, and having likewise complied with the provisions of the Reasonable Rents Act, and since defendant Abelardo Ruiz Suria failed to exercise the right to the option to purchase granted to him by the other codefendant Enrique Igaravídez, defendant's right was extinguished and he has no basis for the title to the property object of this action, and since he agreed to vacate the property on or before August 31, 1959 and failed to comply with that obligation, he made it impossible for defendant Enrique Igaravídez to perform his contract with plaintiff Dr. Jacobo Simonet, wherefore he is bound in the last instance to repair the damages sustained by codefendant Enrique Igaravídez as a result of his inability to comply with his contractual obligations.

"Defendant Abelardo Ruiz Suria is liable to codefendant Enrique Igaravídez for all the damages attributed to him by plaintiff from September 1, 1959 to the date of the judgment in this case.

"Considering that the property was rented for $145 a month and that defendant Abelardo Ruiz Suria has not paid the same since June 1, 1959, the court is of the opinion that it should fix, and does hereby fix, the damages caused to plaintiff at the sum of $7,300 at the rate of $10 a day from September 1, 1959 to September 30, 1961, including in that sum the value of the use of the property object of this litigation, and to pay further to plaintiff the sum of $435 by way of rent for the months of June, July and August 1959, plus the sum of $10 a day for the days he occupies the house from October 1, 1961 until the same is completely vacated, including the costs of this proceeding and the sum of $500 imposed upon defendant Abelardo Ruiz Suria for fees for plaintiff's attorney.

"It is further ordered that plaintiff be delivered and placed in possession of the property object of this litigation after this judgment becomes final."

On February 2, 1962, appellant delivered the key of the dwelling to the purchaser-appellee in compliance in part with

the judgment, since he had terminated the construction of a new residence near the property in litigation and was occupying the same, wherefore he did not need to hold the possession of the property of appellee, having lost interest in continuing the litigation of title thereto. In the same writing he made an offer to pay at the rate of $145 a month, which was the rent which he paid for the lot and dwelling for the 32 months and two days which appellant occupied the house without paying the corresponding rent. Such offer was rejected by the purchaser and by the vendor of the property in litigation, and thereupon appellant filed this petition for review of that part of the judgment ordering him to pay damages at the rate of $10 a day, on the following grounds: (1) because the action exercised by plaintiff amounted to an action of unlawful detainer and as such it was subject to the provisions of the Reasonable Rents Act which is still in force; (2) because the fair and reasonable compensation for the use of the property during the period of occupancy is none other than the rent of $145 a month stipulated in the lease contract under which appellant occupied the property; (3) that since appellant was not a party to the penalty clause agreed upon between the former owner-lessor and the new purchaser, he could not be obligated to pay the amount of $10 a day fixed in the penalty clause in the event of failure to deliver the property leased by the lessor.

1–2. There is no question that the action exercised in this case against appellant is a possessory action. Reading together § 12 of the Reasonable Rents Act, as amended— 17 L.P.R.A. § 192, p. 525—and § 12-H of the same Act— 17 L.P.R.A. § 200, p. 542—there is no question that both the former owner-lessor and the new purchaser are bound by the provisions of the Reasonable Rents Act in the sense that, regardless of the date of construction or occupancy of both dwellings and business premises, and irrespective of any change of landlord or nominal lessor, the lease contract shall,

on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee, without altering any of the clauses thereof, all of which shall be deemed in force, and the involuntary extension may not be evaded by action to recover possession, nor by injunction or accession proceedings, nor by any other action that may finally bring about the ejectment of the tenant from the dwelling or business premises. This being so, no former owner-lessor may agree with a new purchaser on the date for delivery of a leased dwelling without the acquiescence of the lessee, since as long as there is not established before a court the need for a new purchaser to recover in good faith, for his personal use and immediate occupancy as a place of abode, the lessee is protected by the involuntary extension of § 12 of the Reasonable Rents Act. The former rule of precariousness of the tenant before the new purchaser was defeated by virtue of § 15 of Act No. 464 of April 25, 1946 (Sess. Laws, p. 1326), as amended by Act No. 51 of June 10, 1948 (Sp. Sess. Laws, p. 168), which provides: "In all cases of sale, cession, or alienation of a leased property, the lease contract of the tenant with the previous owner shall be understood as subsisting and as subject to the extension specified in Section 12 of this Act. Neither may the person acquiring a leased property file proceedings against the tenant, for eviction, unlawful detainer, or to recover the possession of said property except for the causes and under the terms and conditions set forth in Sections 12A to 12J of this Act."

■ There is no question that the Reasonable Rents Act of Puerto Rico is applicable to a "dwelling" situated on rural property. In the declaration of policy of that Act, in referring to the need for declaring that there exists an emergency, it is said that the "housing" problem affects the welfare, the health, the safety, and the lives of hundreds of thousands of women, men, and children throughout the rural districts (rural perimeter) and towns (urban perimeter) of Puerto

Rico. On the other hand, § 4 of the Reasonable Rents Act, as amended, subjects every "dwelling" located in Puerto Rico to the provisions thereof. The Spanish doctrine has adopted the same view as to the location of the dwelling. I Castán y Calvillo, *Tratado Práctico de Arrendamientos Urbanos* 178 (Reus ed. 1956). Our decisions in *Igartúa* v. *Ruiz*, 73 P.R.R. 339, 344 (Marrero) (1952) (lease of rural property), and *Riera* v. *Super. Ct.*; *Adm'r Econ. Stab., Int.*, 79 P.R.R. 598, 603 (Saldaña) (1956) (lease of urban property without a dwelling), are not applicable in the case of a dwelling standing on rural property.

██ This being so, there is no question that the former owner-lessor and the new purchaser could not agree, without the consent of the lessee or without the corresponding judicial declaration as to the repossession of the dwelling for the personal use of the new owner, on the delivery of the leased property other than within the terms and subject to the conditions established by the Reasonable Rents Act of Puerto Rico. Any covenant on the delivery or immediate use which is contrary to law would be void.

██ 3. Any independent covenant made by the former owner-lessor with the new purchaser would not be binding either even if it partakes of the nature of a penalty clause for breach of contract. We know that the two most important functions of a penalty clause are to guarantee the performance of an obligation—IV-1 Puig Peña, *Tratado de Derecho Civil Español* 76–79 (1951 ed. of *Revista de Derecho Privado*), and to serve as liquidator of the damage, according to Castán, to evaluate in advance the damages which may be caused to the creditor by the improper nonperformance of the obligation—3 Castán, *Derecho Civil Español, Común y Foral* 120-21 (Reus ed. 1954). See, also, D. E. Espín Cánovas, *La Cláusula Penal en las Obligaciones Contractuales*, 30 *Revista de Derecho Privado* 145 (March 1946). However, in

a situation such as the one at bar, nonperformance is not possible, since the exercise of the principal action of which the penalty clause is accessory is regulated by the State, and no determination of damages may be made in advance because the obligation is for a price certain, compulsorily extended by the Act by a declaration of emergency. Moreover, since the lessee was not a party to the contract in which the penalty clause was stipulated, there is no juridical privity compelling him to fulfill it. This being so, the new purchaser, plaintiff-appellee herein, is only entitled to collect the lease rental already agreed upon during the compulsory extension established by our Reasonable Rents Act.

The judgment rendered will be modified in accordance with the terms of this opinion.